UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARACELI PELICO CALEL,<br><br>                             Petitioner,<br>v.<br>CHRISTOPHER J. LAROSE, *et al.*,<br><br>                            Respondents. | Case No.: 3:25-cv-02883-GPC-JLB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

On October 27, 2025, Petitioner Araceli Pelico Calel ("Petitioner") filed a petition for writ of habeas corpus, naming the Warden of the Otay Mesa Detention Center, Immigration and Customs Enforcement and Removal Operations ("ICE")'s Field Office Director for the San Diego Field Office, and several other individual agency officials as respondents ("Respondents"). ECF No. 1 ("Pet."). Respondents filed a response in opposition, and Petitioner filed a traverse. ECF No. 5 ("Opp."); ECF No. 7 ("Traverse"). The Court finds the matters suitable for decision on the papers and VACATES the hearing scheduled for November 14, 2025. For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus.

///

# I. BACKGROUND

## A. Factual Background

Petitioner, a Guatemalan national, entered the United States in 2007. Pet. ¶ 17. She entered without being admitted, paroled, or inspected. Opp. at 2.[1] Petitioner has no criminal record and is currently pursuing a U-visa with USCIS, asylum, and cancellation of removal based on extreme and exceptionally unusual hardship. Pet. ¶¶ 48-49.

On July 21, 2025, Petitioner was arrested by ICE agents. *Id*. ¶ 46. She was "charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States who has not been admitted or paroled." Opp. at 2. After being detained, she was placed in 8 U.S.C. § 1229a removal proceedings and issued a Notice to Appear ("NTA"). *Id*. Petitioner remains detained at the Otay Mesa Detention Facility. *Id*.

## B. Procedural Background

Petitioner requested a change in her custody status and to be released on bond. Pet. ¶ 50; Opp. at 2. On August 1, 2025, the immigration judge found that Petitioner "demonstrated that she neither poses a danger to the community nor such a significant flight risk that she could not be released after payment of a bond." Pet. ¶ 50. Thus, the immigration judge granted Petitioner's request, allowed her release upon a payment of the $4,500 bond. *Id*. Subsequently, Respondent appealed the decision to the Board of Immigration Appeals ("BIA"). *Id*. ¶ 51.

On September 5, 2025, the BIA decided *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). In that decision, the BIA stated that any individual who entered the United States without admission is an "applicant for admission" and must, therefore, be detained during removal proceedings pursuant to 8 U.S.C. § 1225(b)(2). 29 I&N Dec.

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

216, 228 (BIA 2025). The BIA also held that "[b]ased on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Id*. at 216.

In light of *Matter of Yajure Hurtado*, on October 20, 2025, the BIA issued a decision affirming the appeal and vacating the immigration judge's bond order. Pet. ¶ 35, 52.

On October 27, 2025, Petitioner filed a petition for writ of habeas corpus. The Petition asserts that Petitioner's detention violates the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause. *Id*. ¶¶ 53-63. Thus, Petitioner requests (1) a writ of habeas corpus ordering Petitioner's release or, alternatively, her release on the $4,500 bond previously authorized by the immigration judge and (2) an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A prisoner bears the burden of

demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## III.   DISCUSSION

### A.   Jurisdiction

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241, the Suspension Clause, federal question, 28 U.S.C. § 1331, original jurisdiction, 28 U.S.C. § 1346, and waiver of sovereign immunity, 5 U.S.C. § 702. Pet. ¶ 13. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims per 8 U.S.C. § 1252(b)(9) and (g). Opp. at 7-9. As previously found by this Court and others in this District, the Court finds that neither statute bars jurisdiction. *See, e.g., Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *3-4 (S.D. Cal. Sept. 3, 2025); *Noori v. Larose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *6-7 (S.D. Cal. Oct. 1, 2025).

#### 1.   Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, --- F.4th ----, 2025 WL 2461663, at *7 (9th Cir. Aug. 27, 2025).

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." 8 U.S.C. § 1252(g). However, unlike Respondents' characterization,

4

1  Petitioner does not challenge the decision to commence proceedings or even the
2  legitimacy of the removal proceedings. Instead, Petitioner challenges the legality of
3  detention during removal proceedings. Pet. ¶¶ 54-55.
4      Further, a decision to detain Petitioner does not fall within the three discrete
5  actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See,*
6  *e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim
7  against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d
8  214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D.
9  Minn. 2020) ("Although the court may not review discretionary decisions made by
10 immigration authorities, it may review immigration-related detentions to determine if
11 they comport with the demands of the Constitution.").
12     Thus, § 1252(g) does not present a jurisdictional bar to the instant petition.

        **2.    Section 1252(b)(9) – Zipper Clause**

14     Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact,
15 including interpretation and application of constitutional and statutory provisions, arising
16 from any action taken or proceeding brought to remove an alien from the United States
17 under this subchapter shall be available only in judicial review of a final order." 8 U.S.C.
18 § 1252(b)(9). Section 1252(b)(9) is seen as a general jurisdictional limitation that
19 channels judicial review of immigration actions and decisions and acts as a zipper clause.
20 *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). "However,
21 what it 'zips' are requests for review of various kinds of agency action which are heard
22 by means of petitions for 'judicial review'…[i]t does not affect petitions for habeas
23 corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133 (9th Cir. 2000). Claims that are
24 "independent of or collateral to the removal process," including the legality of detention,
25 fall outside the scope of § 1252(b)(9). *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975
26 F.3d 788, 810 (9th Cir. 2020) (citation and internal quotations omitted) ("Section

1252(b)(9) is also not a bar to jurisdiction over noncitizen class members' claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Respondents claim that Petitioner is "challenging the government's decision to detain her in the first place," creating a bar under § 1252(b)(9). Opp. at 9. However, Petitioner is, instead, challenging her continued detention under § 1225(b)(2). Pet. ¶ 55. "Petitioner's detention may be during, but is nonetheless independent of, the removal proceedings." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *4 (S.D. Cal Oct. 30, 2025). Thus, § 1252(b)(9) does not present a jurisdictional bar.

### B.   Merits

#### 1.   Availability of Bond for Non-Citizen Living in the U.S.

The habeas petition raises the question as to whether § 1225(b)(2)(A) or § 1226(a) governs the availability of bond for a non-citizen who has lived in the United States for 18 years and was never lawfully admitted to the United States. Petitioner argues that her detention under § 1225(b)(2) is unlawful because the mandatory detention section does not apply to her. Pet. ¶ 54. Following from this claim, Petitioner also asserts that (1) Respondents do not have statutory authority to detain Petitioner under § 1225(b)(2) and, thus, violate the APA and (2) Respondents violate Petitioner's Fifth Amendment due process rights by now allowing Petitioner to post the bond the immigration judge granted her pursuant to § 1226(a). *Id*. ¶¶ 58, 63. Respondents have maintained that Petitioner is properly detained under § 1225(b)(2) as an "applicant for admission," which would invalidate all three claims. Opp. at 9-13. Ultimately, the Court is called upon to interpret §§ 1225(b)(2) and 1226(a).

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs expedited removal proceedings and concerns

"applicants for admission" who are defined as an "alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States" is inspected by immigration officers. *Id*. § 1225(a)(3). If an applicant is deemed inadmissible after inspection, the applicant will be subject to expedited removal "without further hearing or review," unless an intention to apply for asylum is indicated where the applicant would then be referred for a credible fear interview. *Id*. § 1225(b)(1)(A)(i)-(ii). For other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." *Id*. § 1225(b)(2)(A).

In contrast, Section 1226 does not concern expedited removal and states that that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id*. § 1226(a). The government will then make an initial decision to either detain or release the noncitizen, and from that point, the noncitizen may request a bond hearing before an immigration judge. *Id* § 1226(a)(1)-(2); 8 C.F.R. § 1236.1. Section 1226, however, "carves out a statutory category of aliens who may not be released under § 1226(a)," which focuses on those who are inadmissible or deportable because of certain crimes. *Jennings v. Rodriguez*, 583 U.S. 281, 296-97 (2018); 8 U.S.C. §§ 1226(a), (c).

Petitioner contends that 8 U.S.C. § 1225(b)(2) does not apply to her because the statute "does not apply to those who previously entered the country and have been present and residing in the United States prior to being apprehended and placed in removal proceedings." Pet. ¶ 54. Therefore, in Petitioner's view, she may only be detained pursuant to § 1226(a).

In response, Respondents argue that Petitioners are "applicants for admission" per the plain language of the statute and, thus, subject to the mandatory detention provisions

of § 1225(b)(2). Under this lens, though § 1225 states that an "applicant for admission" must be "seeking admission," Respondents maintain that all applicants for admission are definitionally "seeking admission," meaning nothing else is required for § 1225(b)(2) to apply beyond one's status as an "applicant." Opp. at 12.

Like several other cases in this District have found, "[t]he Court finds the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted." *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *5 (S.D. Cal. Nov. 4, 2025).

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). In doing so, "a court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) (citation omitted). Respondents seem to agree with this point, as they encourage the Court to use the "basic interpretative canon…that a 'statute should be construed so that effect is given to all its provisions.'" Opp. at 11 (quoting *Corely v. United States*, 556 U.S. 303, 314 (2009)).

Respondents' arguments on Section 1125's interpretation, however, fail on three fronts. First, "Respondents' interpretation of 'seeking admission' as used in the mandatory detention provision of Section 1225(b)(2)(A) would seemingly render that phrase mere surplusage, such that the language could be deleted while retaining the same statutory meaning." *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). This interpretation runs counter to the

interpretative canon the Respondents seem to promote, namely that effect should be given to all statutory provisions. Therefore, the more apt interpretation in alignment with the canon must, instead, account for "seeking admission" as an additional requirement to those identified as "applicants for admission."

As many cases in this District and this Circuit have found, "seeking admission" is best understood to require "an affirmative act such as entering the United States or applying for status." *See, e.g.*, *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). Thus, here, Petitioner was not "seeking admission" within this interpretation. She was arrested in the interior of the United States, close to her home, not while presenting herself at the gate of entry to attempt to apply for admission.

Second, Respondents' interpretation blurs the lines between § 1225(b) and § 1226(a). As made clear in *Jennings*, "U.S. immigration law authorizes the government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." 583 U.S. 281, 289 (2018). The Supreme Court thereby interprets § 1225(b) to apply to "aliens seeking admission to the country," while § 1226(a) applies to "aliens already in the country." Here, Petitioner is sensibly characterized as a noncitizen "already in the country" rather than one "seeking admission." Indeed, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section

1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Lopez*, 2025 WL 3005346, at *4 (citations omitted).

Third, Section 1226(a) already provides an exception to its rule that the Attorney General may set bond or release an alien on conditional parole, specifically under subsection (c). Enacted by the Laken Riley Act, § 1226(c)(1)(E) requires mandatory detention for people who are inadmissible under § 1182(a)(6)(A), (6)(C), or (7) *and* charged with certain crimes. 8 U.S.C. § 1226(c)(1)(E). Beyond the fact that Petitioner doesn't satisfy these requirements, "Respondents' interpretation of Section 1225(b)(2)(A) would seemingly render the foregoing language from Section 1226(c) a nullity." *Lopez*, 2025 WL 3005346, at *4 (citations omitted). Specifically, "if § 1225(b)(2) already encompassed all inadmissible noncitizens, there would be no need to pass an amendment that required detention for those who are inadmissible under the same statutes and are being charged with specific crimes." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *5 (S.D. Cal Oct. 30, 2025). Such an "interpretation would render the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), 'superfluous'" and, therefore, should not be accepted. *Id*.

In sum, based on the statutory language and Petitioner's facts, the Court finds that Petitioner is being unlawfully detained under § 1225(b)(2).[2]

## IV. CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus. This Court hereby **ORDERS** Respondents to release Petitioner from custody within 48 hours of this Order's filing, pursuant to the bond order issued by the immigration judge on August 1, 2025. The parties are **ORDERED** to file a Joint Status

---

[2] Having reached this conclusion on Petitioners' first claim for relief, the Court declines to address Petitioners' remaining claims for relief.

Report within 72 hours of this Order's filing, confirming Petitioner's release. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondents shall not cause Petitioner to be re-detained during the pendency of her removal proceedings without prior leave of this Court. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records by <u>December 1, 2025,</u> and Respondents are instructed to file any opposition by <u>December 15, 2025</u>.

      **IT IS SO ORDERED.**

Dated: November 13, 2025

                                      Hon. Gonzalo P. Curiel
                                      United States District Judge